| | |
|---|---|
| JACQUELINE MENARD, et al., ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) | **ORDER** |

On October 7, 2015, Stephen Menard ("Menard" or "plaintiff"), both in his personal capacity and as representative of the estate of Jacqueline Menard, filed this action against the United States of America ("the government" or "defendant") [D.E. 2].[1] On January 13, 2016, the government moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [D.E. 9] and filed a memorandum in support [D.E. 10]. On March 1, 2016, Menard responded in opposition [D.E. 15]. On March 31, 2016, the government replied [D.E. 20]. As explained below, the court grants the government's motion to dismiss [D.E. 9] and dismisses Menard's complaint for lack of subject-matter jurisdiction.

I.

On December 3, 2010, United States Marine Corps Staff Sergeant Vicente Gomez ("Gomez") attended a Marine Corps party, known as a mess night. Compl. ¶¶ 10, 16, 23. The Marine Corps provided alcohol to those attending the mess night, which took place at Marine Corps

---

[1] Menard names as plaintiffs himself, Jacqueline Menard, and himself as "personal representative of the estate of Jacqueline Menard, deceased." See Compl. [D.E. 2] 1. Jacqueline Menard cannot be a plaintiff. Cf. Fed. R. Civ. P. 25(a). She was deceased when Stephen Menard filed suit.

Auxiliary Landing Field Bogue ("Bogue Field"). Id. ¶¶ 26–27, 32; [D.E. 10] 2. Gomez became intoxicated at the party. Compl. ¶ 34; see id. ¶¶ 18–22. At some point during the evening, Gomez left the mess night and drove toward Emerald Isle. Compl. ¶¶ 35–39.

Gomez exited Bogue Field in his car, passed a guard gate, and drove onto North Carolina Highway 24. Id. ¶¶ 35–36. Gomez continued driving to Emerald Isle, North Carolina. Id. ¶ 37. Gomez eventually attained speeds of 90–100 miles per hour. Id. ¶¶ 37–38. Once on North Carolina Highway 58 East, Gomez steered his vehicle into oncoming traffic. Id. ¶ 39. Gomez's car collided into Menard's delivery truck while Gomez was driving on the wrong side of the road. Id. ¶¶ 10, 39. Gomez died at the scene of the accident. Id. ¶ 17. As a result of the accident, Menard suffered "severe, permanent and disabling injuries." Id. ¶ 12.

On June 26, 2014, Menard's wife Jacqueline overdosed on medications prescribed to treat her depression. Id. ¶¶ 13–14. Menard attributes Jacqueline's death to the emotional and financial fallout from the accident, and he believes her depression resulted from "los[s of] the consortium of her husband, who was the family's primary bread winner [sic]" and the "constant demands of" caring for Menard in his debilitated state. Id.

Menard files this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680 ("FTCA"). Id. ¶ 9 Menard alleges that the government is liable under the theory of respondeat superior, as a "[s]overeign that has consented to be sued for its negligent acts and/or omissions committed by its employees, agents and/or servants conducted within the course and scope of their employment." Id. ¶ 9, 57. Specifically, Menard asserts that Gomez was "acting within the course and scope of his employment with the United States Marines" at the time of the accident. Id. ¶ 47. As such, the "acts and omissions of Gomez are imputed by operation of law to the United States Marines and to the United States." Id. ¶ 56.

2

Although not a model of clarity, Menard's complaint also alleges negligence directly against the government based on two separate theories. First, Menard alleges that the government owed Menard a duty of care because of its special relationship with Gomez. Id. ¶¶ 53–54. Specifically, Menard states that the government "has and had a special relationship with Gomez which required it to use due care to avoid [Gomez's] doing harm to others . . . in light of the serious risk presented" by Gomez. Id. ¶ 53. Second, Menard alleges social-host liability, stating that the Marine Corps "had a duty not to serve anyone they knew or should have known was intoxicated . . . [and] would be likely to be driving." Id. ¶¶ 45–46. Menard then discusses multiple planning decisions the Marine Corps made regarding the mess night, including the selection of a site to which partygoers would drive, the failure to "follow proper procedures and common sense in serving intoxicating beverages to Gomez," and the "fail[ure] to adopt effective safety rules that would prevent Gomez from becoming intoxicated and driving off the base." Id. ¶ 55.[2] Menard seeks money damages. Id. ¶ 59.

The government moves to dismiss Menard's complaint for lack of subject-matter jurisdiction.

---

[2] In his response brief, Menard alleges "that the United States is liable on a general-negligence theory." [D.E. 15] 16–17. The complaint also lists "negligence" as a cause of action against the government. Compl. 7. Cf. Lumsden v. United States, 555 F. Supp. 2d 580, 588–90 (E.D.N.C. 2008). The complaint and the remainder of Menard's filings make clear that Menard alleges a duty between him and the government due to a special relationship between Gomez and the Marine Corps and because the Marine Corps served alcohol at the mess night. See Compl. ¶¶ 53–55; [D.E. 15] 9 (discussing general negligence theory alongside allegations about the serving of alcoholic drinks). North Carolina social-host liability is merely an "appl[ication of] established negligence principles" to a "social host for serving alcoholic beverages." Hart v. Ivey, 332 N.C. 299, 305–06, 420 S.E.2d 174, 178 (1992); cf. Iodice v. United States, 289 F.3d 270, 278 (4th Cir. 2002) (holding that the Hart court "refused to base its decision on [North Carolina's Dram Shop] statute" and instead "relied on the common law duty" to act as a reasonably prudent person); Hall v. Toreros, II, Inc., 176 N.C. App. 309, 324, 626 S.E.2d 861, 871 (2006) (holding that Hart did not "involve[] recognition of a new cause of action" and instead merely applied established negligence principles to the facts of that case).

The court's discussion of Menard's social-host liability claim adequately and appropriately addresses the government's alleged negligence in hosting the mess night and serving alcohol to Gomez. Therefore, the court does not discuss further any separate allegation of negligence.

3

See [D.E. 9]; Fed. R. Civ. P. 12(b)(1). The government argues that Menard has not plausibly alleged sufficient facts to support a respondeat superior claim under North Carolina law. See [D.E. 10] 7–13. Additionally, the government argues that Menard's direct-liability claims fail because Menard provides only naked assertions and legal conclusions devoid of factual enhancement in support of his special-relationship and social-host claims. Id. 14–18.

II.

Absent a waiver, sovereign immunity bars a party from bringing suit against the federal government. FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Sherwood, 312 U.S. 584, 586 (1941). Sovereign immunity under the FTCA is jurisdictional. Sherwood, 312 U.S. at 586. The "burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

In the FTCA, Congress authorized a limited waiver of the federal government's sovereign immunity. See Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). The FTCA waives immunity for "the negligent or wrongful act[s] or omission[s]" of the government or of government employees "acting within the scope of [their] office or employment." 28 U.S.C. § 1346(b)(1). This waiver, however, extends only to those situations in which "a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Id.

The substantive law of the state in which the tortfeasor committed a negligent act or omission applies to determine whether a private person would be liable to a plaintiff. Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011). Here, the events set forth in the complaint occurred in North Carolina. Compl. ¶ 7. Thus, North Carolina law governs whether the government or its employees breached any duty owed to Menard, and the court must determine how the Supreme Court of North Carolina would rule on any disputed state law issue. See Twin City Fire Ins. Co. v. Ben

4

Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013). In predicting how the Supreme Court of North Carolina would address a contested issue, the court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In doing so, however, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the Supreme Court of North Carolina would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 397–98.

A defendant in an FTCA action "may contest subject matter jurisdiction in one of two ways: by attacking the veracity of the allegations contained in the complaint or by contending that, even assuming the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." Durden v. United States, 736 F.3d 296, 300 (4th Cir. 2013). Where, as here, a defendant argues that a complaint's "allegations are insufficient to give rise to a negligence claim," the court properly treats a motion "for lack of subject matter jurisdiction as one for failure to state a claim." Id. at 301; see [D.E. 10] 4; [D.E. 20] 1–2; Chen v. Md. Dep't of Health & Mental Hygiene, Civil Action No.: ELH-15-01796, 2016 WL 632036, at *9 (D. Md. Feb. 17, 2016) (unpublished). Thus, the court evaluates the legal and factual sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano

5

v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In considering a motion to dismiss, a court need not accept the complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Menard contends that the government is liable for Gomez's actions under a theory of respondeat superior. As part of the FTCA, the federal government has waived its sovereign immunity when members of its armed forces behave negligently while "acting in line of duty." 28 U.S.C. § 2671. Whether an act or omission is properly "in line of duty, however, merely invokes the state rules of respondeat superior." Tyndall v. United States, 295 F. Supp. 448, 452 (E.D.N.C. 1969) (quotation omitted): see Williams v. United States, 350 U.S. 857, 857 (1955) (per curiam); Gupton v. United States, 799 F.2d 941, 942 (4th Cir. 1986) (applying North Carolina's respondeat superior law in case involving a Marine sergeant). Accordingly, the court applies North Carolina respondeat superior law.

In North Carolina, "employers are liable for torts committed by their employees who are acting within the scope of their employment under the theory of respondeat superior." Matthews v. Food Lion, LLC, 205 N.C. App. 279, 281, 695 S.E.2d 828, 830 (2010). To prove respondeat superior liability, a plaintiff must "not only show that the person [who committed the tort] . . . was defendant's servant, but the further fact that he was at the time engaged in the master's business." Lindsey v. Leonard, 235 N.C. 100, 103, 68 S.E.2d 852, 854 (1952) (quotation omitted). As part of

6

its respondeat superior jurisprudence, North Carolina employs the coming-and-going rule. Whicker v. Compass Grp. USA, Inc., 784 S.E.2d 564, 568–69 (N.C. Ct. App. 2016); see Royster v. Culp, Inc., 343 N.C. 279, 281, 470 S.E.2d 30, 31 (1996). That rule provides that "an injury by accident occurring while an employee travels to and from work is not one that arises out of or in the course of employment." Royster, 343 N.C. at 281, 470 S.E.2d at 31.

Menard's respondeat superior claim fails. Even if this court accepts as true Menard's assertion that the mess night was "primarily a work event," Compl. ¶ 40, the accident between Gomez and Menard occurred while Gomez traveled home from that work event. See Royster, 343 N.C. at 281, 470 S.E.2d at 31. Thus, the accident did not "arise out of or in the course of" Gomez's employment, and respondeat superior liability does not attach. Accordingly, this court lacks jurisdiction over Menard's claim. Id. at 281, 470 S.E.2d at 31; see Jennings v. Backyard Burgers of Asheville, 123 N.C. App. 129, 131, 472 S.E.2d 205, 207 (1996); cf. Hooper v. C.M. Steel, Inc., 94 N.C. App. 567, 569, 380 S.E.2d 593, 594–95 (1989).

In opposing this conclusion, Menard notes that North Carolina's coming-and-going rule "is subject to a number of exceptions." Graven v. N.C. Dep't of Pub. Safety–Div. of Law Enf't, 235 N.C. App. 37, 44, 762 S.E.2d 230, 235 (2014) (mentioning the traveling-salesman exception, the contractual-duty exception, the special-errand exception, and the dual-purpose exception). Menard then cites Chastain v. Litton Systems, Inc., 694 F.2d 957, 962–63 (4th Cir. 1982), where the Fourth Circuit interpreted North Carolina law and seemingly found an additional exception to the coming-and-going rule. See id. at 962. In Chastain, a defendant company "sponsor[ed]" a Christmas party for numerous employees. Id. at 959. The party "began at approximately 8:00 a.m.," was held on the defendant-employer's premises, and employees "were required to check in . . . in order to be paid for that day." Id. After attending the party, a company employee "drove through a red traffic light

7

and struck [plaintiff's] car." Id. The employee driver had "become intoxicated" while at the defendant company's party, and he was drunk at the time of the accident. Id.

In Chastain, the Fourth Circuit analyzed whether "the initial issue [of] whether the party [where the negligent employee became intoxicated] was purely a social occasion, or whether it was sufficiently related to [the employer's] business to bring [the employee's] attendance within the scope of his employment." Id. at 962. In Chastain, the Fourth Circuit disregarded the coming-and-going rule. Id. Instead, it held that "the critical time for determining whether the doctrine of respondeat superior should be applied" is not when an accident takes place but "when [the employee] became intoxicated." Id. Thus, the Fourth Circuit reversed a grant of summary judgment on the question of respondeat superior liability. Id.

Here, the court must determine whether the Supreme Court of North Carolina would apply Chastain to Menard's claim. In making this determination, the court looks to decisions of the Supreme Court of North Carolina and the North Carolina Court of Appeals. See Toloczko, 728 F.3d at 397–98. In Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133 (1995), the Supreme Court of North Carolina analyzed Chastain.[3] Camalier involved a retirement party where the defendant company provided and served "food and drinks." Id. at 704–05, 460 S.E.2d at 134–35. After attending the party, an employee got into his car, and while he "was driving . . . his automobile collided" with another car. Id. at 704–05, 460 S.E.2d at 135. The employee had "three or four gin and tonics which he obtained from the bars" at the party, and he was legally drunk when he driving. Id. at 704–05, 460 S.E.2d at 135.

---

[3] The Fourth Circuit's interpretation of North Carolina law in Chastain is not binding on the Supreme Court of North Carolina. See, e.g., Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996); Stephenson v. Bartlett, 355 N.C. 354, 374, 562 S.E.2d 377, 391 (2002).

8

The Camalier court "assum[ed], without deciding, that Chastain is a proper application of North Carolina law" before finding the case factually distinguishable. Id. at 714, 460 S.E.2d at 140. The Supreme Court affirmed a grant of summary judgment against the plaintiff. In doing so, the Supreme Court found that "[n]o record of attendance was taken [at the party]," that "there was no evidence that an employee's failure to attend would have resulted in adverse consequences," that "the party was held on the weekend," that employees "w[ere] not compensated for time spent attending the party and w[ere] not required to work" if they decided against attending, and that "the party was held at [a] private home" instead of at the work location itself. Id. at 714–15, 460 S.E.2d at 141.

Building on Camalier, the North Carolina Court of Appeals decided Williams v. Levinson, 155 N.C. App. 332, 573 S.E.2d 590 (2002). The Williams court stated that "our Supreme Court cited [the Chastain decision] in Camalier . . . but never decided whether it was a correct application of North Carolina law." Id. at 336, 573 S.E.2d at 593. The Williams court then summarized the standards described in Camalier and described a multi-factor test. The Williams court noted:

> There were several factors considered by the Supreme Court in Camalier: (1) whether the employee performed any of her job functions while attending the employer-sponsored social function; (2) whether the social function did more for the employer than simply boost morale and camaraderie among employees; (3) whether there was a specific benefit to productivity or profitability of the business resulting from the social function; (4) whether the social function was held during normal business hours; (5) whether the social function was held at the place of business or some other facility; (6) whether employees were compensated for the time spent attending the social function; (7) whether an employee was required to work if that employee chose not to attend the social function; (8) whether an employee stated that he felt compelled to attend the social function, or rather, simply felt that his attendance would help, might be noticed, or other such feelings; (9) whether there was evidence that an employee's failure to attend the social function would result in adverse consequences for the employee; (10) whether attendance was taken at the social function; and (11) whether there was any other evidence that employees were required to attend the social function.

9

Id. at 338, 573 S.E.2d at 593–94. No single factor controls the analysis. See id. at 338, 573 S.E.2d at 594. Nonetheless, the Williams court applied the coming-and-going rule even where an employee "was driving on the way to an employer-sponsored Christmas party from her place of employment at the time of the collision." Id. at 338–39, 573 S.E.2d at 594.

Applying the eleven-factor Williams test, this court concludes that Menard has failed to plausibly allege sufficient facts to support the court's exercise of subject-matter jurisdiction. The complaint's characterization of the mess night as a "highly ritualized," "formal Marine Corp[s] party sponsored by [Gomez's] superior officers" and "primarily a work event" "so much a part of the traditions of the Marine Corp[s] that the method of putting on this type of party is a part of the training of each Marine" does not plead the claim within Chastain's ambit. See Compl. ¶¶ 23–24, 40–42; cf. Williams, 155 N.C. App. at 338–39, 573 S.E.2d at 594 (analyzing an employee driving to an off-site "employer-sponsored Christmas party" during normal business hours).

Menard's contention that the mess night was "not a social event," Compl. ¶ 40, is a "naked assertion[ ] devoid of further factual enhancement." Iqbal, 556 U.S. at 678–79 (quotations omitted). The court need not accept such an assertion and declines to do so. See id. Tellingly, Menard has not alleged that Gomez was "required to work if . . . [he] chose not to attend" the mess night, that "attendance was taken at the social function," or that the mess night had a "specific benefit to productivity or profitability" of the Marine Corps. Williams, 155 N.C. App. at 338, 573 S.E.2d at 593–94. Menard also has not alleged that the mess night "was held during normal business hours" or that the Marine Corps ordered or expected Gomez to attend. See id. at 338, 573 S.E.2d at 593.

Of the eleven Williams factors, Menard's complaint expressly alleges only that the event took place on Marine Corps property. See Compl. ¶ 27; Williams, 155 N.C. App. at 338, 573 S.E.2d at 593–94. Nonetheless, the complaint does not state whether Gomez himself or any of the other

10

Marines at the party routinely worked at Bogue Field. Cf. Williams, 155 N.C. App. at 338, 573 S.E.2d at 593–94. Additionally, while Menard's response brief alleges that "[a]ttendance is required" at the mess night, [D.E. 15] 13, the court properly considers only the complaint and documents attached it on a motion to dismiss. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Finally, Menard's allegation that Gomez wore a uniform to the mess night, see Compl. ¶ 11, does suggest a certain non-social formality to the event. The court concludes, however, that this allegation and the location of the event are not enough for Chastain to apply. Accordingly, the court predicts that the Supreme Court of North Carolina would conclude that Menard has failed to sufficiently allege respondeat superior liability. Thus, the court lacks subject-matter jurisdiction over Gomez's respondeat superior claim.

B.

Menard next alleges that the special relationship between Gomez and the government created a duty for the government to protect others from Gomez. In North Carolina, "'there is [generally] neither a duty to control the actions of a third party, nor to protect another from a third party.'" Durden, 736 F.3d at 304 (quoting Scadden v. Holt, 222 N.C. App. 799, 802, 733 S.E.2d 90, 92 (2012)). Still, some "[s]pecial relationships create a responsibility to take affirmative action for the aid or protection of another." Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796–97 (2013) (quotation omitted). Special relationships "arise only in narrow circumstances" where there is "a voluntary assumption of another's care and well-being or the ability to control the third person at the time of the [tortious] acts." Id. at 541–42, 742 S.E.2d at 797. Where a special relationship exists, "there is a duty upon the actor to control the tortfeasor's conduct and to guard other persons against his dangerous propensities." Durden, 736 F.3d at 305 (alteration and quotation omitted); see King v. Durham Cty. Mental Health Developmental Disabilities and Substance Abuse Auth., 113 N.C.

11

App. 341, 346, 439 S.E.2d 771, 774 (1994). "Control" in special-relationship cases takes on a nuanced definition. "The ability and opportunity to control must be more than mere physical ability to control. Rather, it must rise to the level of custody, or legal right to control." Scadden, 222 N.C. App. at 803, 733 S.E.2d at 93.

Menard has not plausibly alleged control. Menard's response brief states that "[t]he Marine Corps certainly had the ability to control [Gomez]. He was on a fenced guarded military base and surrounded by superior officer[s] with the command authority to issue orders to him and to other [M]arines to arrest him if need be." [D.E. 15] 13. However, the Marine Corps' ability to "issue orders to" or "arrest" Gomez as his employer or military entity does not amount to control sufficient to allow jurisdiction. Durden, 736 F.3d at 305. The waiver of sovereign immunity in 28 U.S.C. § 1346(b)(1) applies only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). As such, the Marines "must have had some other legal authority to control" Gomez beyond "his employment status as a soldier." Durden, 736 F.3d at 305.

Even if control could be shown, Menard's complaint does not plausibly allege that Gomez possessed a "dangerous propensit[y]"–to drive while intoxicated, or even to become intoxicated in the first place–that would have created a duty based on a special relationship. See Durden, 736 F.3d at 305. The complaint merely asserts that the government "knew or should have know[n] that [Gomez] was visibly intoxicated." Compl. ¶ 48. The court need not accept such "a naked assertion[ ]" and declines to do so here. See Iqbal, 556 U.S. at 678–79 (quotations omitted). Moreover, no dangerous propensity can be inferred from the allegation that "the Marines . . . knew or should have known that it was likely that participants in the event who were served alcohol were likely to become intoxicated to the point that it would not be safe for them to drive" and that these servicemen and

12

servicewomen "would likely make bad decisions in their intoxicated state and attempt to drive." Compl. ¶¶ 28–29. The court rejects the dubious premise of the allegation: that all Marines at the mess night had such a "dangerous propensity." See Giarratano, 521 F.3d at 302.

Any ability to order, arrest, and detain Gomez stemmed from Gomez's status as a Marine and the government's status as his employer. Menard has not alleged any other legal authority that the Marine Corps had over Gomez besides that of employer. See Durden, 736 F.3d at 305. Likewise, Menard has not alleged that Gomez exhibited the kind of dangerous propensity that gave the Marine Corps a duty to protect third parties from harm. Id. Thus, the court dismisses Menard's special-relationship claim.

C.

Finally, Menard alleges social-host liability against the government. North Carolina recognizes social-host liability within its general-negligence jurisprudence. Individuals in North Carolina are "under a duty to the people who travel on the public highways not to serve alcohol to an intoxicated individual who was known to be driving." Hart, 332 N.C. at 305, 420 S.E.2d at 178. A plaintiff claiming social-host liability must show that the defendant "served an alcoholic beverage to a person [he or she] knew or should have known was under the influence of alcohol and the defendant[ ] knew that the person . . . would shortly thereafter drive." Id. at 305, 420 S.E.2d at 178.

Menard's only allegation supporting social-host liability is that the Marine Corps "had a duty not to serve anyone they knew or should have known was intoxicated and would be likely to be driving" and that "[a]t the time that Gomez was served intoxicating beverages . . . the defendant knew or should have know[n] that he was visibly intoxicated and likely to drive." Compl. ¶¶ 46, 48. Menard has not plausibly alleged any facts in support of these statements. For example, he does not allege that Gomez declared that he was drunk to a superior officer or anyone else at the mess night,

13

that Gomez had been stumbling or slurring his words, or even that anyone else at the mess night had seen Gomez drink excessively. Menard's declaration that the government "knew or should have know[n] that [Gomez] was visibly intoxicated and likely to drive" amounts to a "naked assertion[ ] devoid of further factual enhancement." Iqbal, 556 U.S. at 678–79 (quotations omitted). The court need not accept such assertions, and declines to do so. See id. Because Menard has failed to allege sufficient facts to support a claim of social-host liability, the court dismisses that claim for lack of subject-matter jurisdiction.

III.

In sum the court GRANTS the government's motion to dismiss for lack of subject-matter jurisdiction [D.E. 9] and DISMISSES the complaint for lack of subject-matter jurisdiction.

SO ORDERED. This 10 day of August 2015.

JAMES C. DEVER III
Chief United States District Judge